```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

ANN LYNNE MIRANDONA ROSE                    CIVIL ACTION

VERSUS                                      NO: 05-3102

TENNESSEE GAS TRANSMISSION                  SECTION: "A" (4)
CO., ET AL.

### ORDER AND REASONS

Before the Court is a **Motion for Summary Judgment (Rec. Doc. 99)** and a **Motion for Partial Summary Judgment on Damages (Rec. Doc. 98)** filed by defendant Tennessee Gas Pipeline Co. Plaintiff, Ann Lynne Mirandona Rose, has filed a **Motion for Extension of Deadlines (Rec. Doc. 114)**. All motions are opposed. The motions, set for hearing on November 11, 2009, are before the Court on the briefs without oral argument.

### I. BACKGROUND

In June 2005, Plaintiff, Ann Lynne Mirandona Rose ("Plaintiff" or "Rose"), filed a class action petition for damages against Tennessee Gas Transmission Co., El Paso Energy International Corp., and Popich Marine Construction in Orleans Parish. Rose alleged *inter alia* that the defendants had damaged her property by failing to properly maintain two pipeline canals that crossed her property pursuant to two right-of-ways in favor of TGP. The suit was removed to federal court where Rose

voluntarily dismissed her claims against El Paso and Popich. Rose filed an amended complaint adding Tennessee Gas Pipeline Co. as successor in interest to Tennessee Gas Transmission Co.[1] On May 17, 2006, the Court denied Rose's motion to certify a class. (Rec. Doc. 22).

Rose is a joint owner of an undivided interest in property located in Plaquemines Parish. The property is comprised of coastal wetlands. Two interstate gas pipelines, which are owned and operated by defendant TGP, are located in parallel canals or "flotation ditches" that intersect Rose's property near Breton Sound. TGP lawfully obtained authority to build the two pipelines across Rose's property by initiating expropriation proceedings in state court.

TGP dredged the first canal in 1958 following expropriation proceedings against Rose's predecessor in interest, Violet Trapping Co. ("Violet"). Violet appealed the adverse judgment but ultimately settled the case by granting TGP the right to dredge a canal 40 feet in width and to lay a pipeline within those bounds.[2]

---

[1] At a status conference held on September 25, 2009, the parties clarified that the correct and sole defendant in this case is Tennessee Gas Pipeline Co. (hereinafter referred to as "TGP").

[2] In 1958, Rose's predecessor in title executed a damage release in favor of Tennessee Gas Transmission Co., TGP's predecessor, forever discharging Tennessee from any and all damage claims, both current and future, arising out of the construction of the first pipeline. (Rec. Doc. 54 Exh. 3). Violet received $8,884.16 in consideration for that release. Id.

In the 1960's TGP approached Violet a second time in order to obtain permission to dredge a second pipeline canal but negotiations were unsuccessful. TGP once again initiated expropriation proceedings in state court and in 1964 the state court granted TGP the right to dredge a second pipeline canal on the property. The 1964 judgment provided that the ditch was to be approximately 50 feet in width. The Louisiana Court of Appeal for the Fourth Circuit affirmed the judgment in a written opinion. Tenn. Gas Trans. Co. v. Violet Trapping Co., 200 So. 2d 428 (La. App. 4th Cir. 1967).

In this lawsuit Rose complains that TGP has breached its servitude and right-of-way by failing to maintain the pipeline canals in as near as possible condition to their original states. (Pet. ¶ 17). Rose complains that the pipeline canals have gradually widened to a width in excess of the total 150 foot canal area granted in the 1964 expropriation judgment. (Pet. ¶ 13). Rose contends that her property has been diminished by erosion damage and that the marsh's ecology and hydrology have been adversely impacted. (Pet. ¶¶ 8, 11, & 12). Rose seeks damages and the restoration of her land based on theories of negligence, breach of the duty owed to her servient estate, and trespass. According to Rose, TGP had an ongoing duty to maintain the canals, and its continuing failure to do so constitutes a continuing tort such that prescription has yet to begin to accrue on her claims.

(Pet. ¶¶ 18-19).

On June 5, 2006, TGP, the sole remaining defendant, filed a motion to dismiss and alternatively for summary judgment based on prescription. (Rec. Doc. 24). On September 14, 2006, the Court granted TGP's motion from the bench after concluding that Rose's claims were in fact prescribed. (Rec. Doc. 36). The Court was persuaded that TGP had no duty to maintain the canals thereby foreclosing Plaintiff's contention that TGP had committed a continuing tort.

Plaintiff appealed and the Fifth Circuit reversed and remanded the case. Rose v. Tenn Gas Pipeline Co., 508 F.3d 773 (5th Cir. 2007). The Fifth Circuit, upon conducting a de novo review, rejected TGP's contention that the expropriation judgment did not create a servitude under Louisiana law. Id. at 776. The Fifth Circuit concluded that the judgment had created a servitude thereby implicating Louisiana's suppletive law on servitudes. Id. at 777. Given that the Civil Code articles applicable to servitudes impose a continuing duty to refrain from injuring or aggravating a servient estate, the Fifth Circuit instructed the Court to determine whether the judgment of expropriation or perhaps an agreement of the parties had relieved TGP of that duty. Id. at 778.

After the case was remanded from the Fifth Circuit, TGP once again moved to dismiss the complaint on the basis of prescription.

The Court denied that motion in an Order and Reasons entered on November 12, 2008. (Rec. Doc. 68). The Court explained that the cause of Rose's damages was not a question that the Court could possibly or properly address at that juncture. Rose v. Tenn. Gas Transmission Co., No. 05-3102, slip op. at 9 (E.D. La. Nov. 12, 2008). In the ruling, the Court concluded that the 1964 judgment did not relieve TGP of the duties imposed by the Louisiana suppletive laws pertaining to immovable property and servitudes. Id. at 14. Louisiana law imposes a continuous duty on the dominant estate to refrain from aggravating or damaging the servient estate. Because Rose properly alleged a continuing tort, i.e., continuing wrongful conduct coupled with continuing damage, TGP's motion to dismiss based on prescription was denied. Id. at 16. TGP had also argued that Rose's claims were barred by the two-year prescription provided by La. R.S. § 9:5624, which applies when private property is damaged for public purposes. The Court rejected this argument because application of § 9:5624 requires that the damage be a necessary consequence of the public work involved, and the Court had no evidence before it to determine whether the widening of the canals was a necessary consequence of the pipeline project. Id.

TGP moved for reconsideration and the Court likewise denied that motion citing the reasons given in its prior ruling. (Rec. Doc. 75). Since that time the parties have engaged in some

discovery and efforts thus far to amicably resolve this matter have failed.

TGP has now filed two motions for summary judgment. In its first motion, TGP moves for summary judgment on the entirety of Rose's claims on two grounds. First, TGP argues that Rose's claims are barred by the two-year prescriptive period of La. R.S. § 9:5624 because any damage to her land was incurred as the result of a public work. Alternatively, TGP argues that if Rose's claims are not prescribed then TGP is entitled to summary judgment on the merits because there is no evidence that Rose's land was damaged as a result of any fault on the part of TGP as opposed to inevitable natural occurrences or as a consequence of the public work itself.

In its second motion for summary judgment, which becomes moot if the Court grants TGP's first motion, TGP moves for partial summary judgment on the issue of damages. TGP contends that under Louisiana law Plaintiff is not entitled to restoration damages, and if the Court ultimately awards damages, any such award must be "limited" to the difference between the market value of the property before and after the alleged harm was sustained.

In opposition, Rose contends that TGP's first motion for summary judgment is premature because she has not had the opportunity to finish conducting discovery on the merits including the opportunity to submit expert reports. Rose contends that

expert reports will be relevant to the issue of damage to the property in the form of erosion and whether or not the damage to the property in the form of erosion was caused by the failure of TGP to maintain the canals.  Rose contends that TGP has not presented any evidence that the damage to the property in the form of erosion was a necessary consequence of the pipeline construction and incurred as the result of a public purpose.  Rose also contends that TGP has not demonstrated that the failure to maintain the canals did not result in damage to the property in the form of erosion.

Regarding restoration damages, Rose argues that the question of her entitlement to such damages is a question of fact to be determined at trial based on the particular facts and circumstances presented.  Rose argues that she has compelling personal reasons that justify restoring the property because the property has been owned by members of her family for generations.

## II. **DISCUSSION**

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact."  <u>TIG Ins. Co. v. Sedgwick James</u>, 276 F.3d 754, 759 (5th Cir. 2002) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986)).  A dispute about a

7

material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. (citing Anderson, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. Id. (citing Anderson, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. Id. (citing Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. Id. (citing SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993)).

1) ***TGP's Motion for Summary Judgment and Rose's Motion for Extension of Deadlines***

TGP's motion for summary judgment is DENIED insofar as TGP seeks dismissal based upon the two-year prescriptive period provided by La. R.S. 9:5624.[3] Assuming *arguendo* that the

---

[3] Louisiana Revised Statute § 9:5624, entitled Actions For Damages to Property Damaged for Public Purposes, provides:

> When private property is damaged for public purposes any and all actions for such damages are prescribed by the prescription of two years, which shall begin to run after the completion and acceptance of the public works.

8

construction of the pipeline at issue was a "public work,"[4] then Plaintiff's claim would have prescribed sometime in 1969 because construction on the pipeline was completed in 1967. But the erosion damage at issue in this case is alleged to have resulted from TGP's *ongoing* failure over the decades to maintain the flotation ditches in accordance with the servitude. If Plaintiff can prove that the erosion damage to her land resulted from TGP's *fault*, then La. R.S. 9:5624 will not apply because the damages will not have been a necessary consequence of the pipeline's construction.

Unfortunately, due to Plaintiff's failure to timely procure expert reports, the Court is in no better a position today than it was when it ruled on TGP's prior motion, to know whether the widening of the canals is attributable to TGP's fault. And while

---

La. Rev. Stat. Ann. § 9:5624 (West 2007). The statute applies only when the damage is the "intentional and necessary result or consequence" of the construction work. Perkins v. Simon, 265 so. 2d 804, 808 (La. App. 3d Cir. 1972).

[4] The statute does not define "public work" or "public purpose" but the legislature's purpose in enacting this statute was to create a special exception to the normal rules of prescription in order to limit the exposure of the state and its political subdivisions in connection with the construction of public works. Lyman v. Town of Sunset, 500 So. 2d 390, 392-93 (La. 1987) (quoting Nuckolls v. La. State Hwy. Dep't, 337 So. 2d 313, 315 (La. App. 2d Cir. 1976)). Nonetheless, the statute has been applied to a claim against a private pipeline company in Miller v. Colonial Pipeline Co., 173 So. 2d 840 (La. App. 3d Cir. 1965).

Plaintiff bears the burden of proving that her damages are attributable to some act or omission on the part of TGP, the Court is persuaded that TGP has the burden of establishing that La. R.S. 9:5624 applies. In other words, if TGP hopes to escape the more onerous general rules governing prescription and continuing torts, then it must show that the erosion was a necessary consequence of the pipeline's construction. At present, nothing in the record establishes that the erosion damage alleged in this case was a necessary consequence of the pipeline's construction. And while nothing in the record establishes TGP's fault at this juncture, the Court is not persuaded that § 9:5624 applies by default.

Moreover, although TGP contends that Rose had until 1969 to timely file suit, TGP does not suggest that the significant erosion present decades later occurred within the first two years following the construction of the pipeline. In fact, the Court has seen nothing to suggest how much, if any, of the erosion at issue occurred prior to 1969. Thus, implicit in TGP's argument is the proposition that the erosion damage resulted, if not immediately, then *eventually* from the construction of the pipeline thereby rendering Rose's claim untimely regardless of when the erosion actually occurred.[5]

The Court is persuaded that to the extent that Rose can

---

[5] The Fifth Circuit termed a similar contention in <u>Columbia Gulf</u> as a "remote causation proposition." 290 F.3d at 312.

attribute her damage to TGP's ongoing failure to maintain the canals, then that damage was not sustained as a result of the pipeline construction. It is noteworthy that Rose's own experts had speculated in 1964 as to the acceleration in erosion that would likely take place once the second canal was dredged and they based their prediction in part upon the significant erosion that had already taken place along the first canal.[6] Tennessee Gas, 200 So. 2d at 435. But apparently the trial court rejected those contentions and the appellate court likewise found the prospect of such damage to be too remote, uncertain, and speculative at the time. Id. at 436. The appellate court then alluded to the possibility that Rose might bring an action in the future if such damage were to occur. Id. Apparently neither the trial court nor the appellate court was persuaded that the prospect of erosion due to the mere construction of the pipeline, as opposed to TGP's fault, was a certainty. Likewise, over forty years later, this Court has nothing upon which to base a finding that the erosion resulted from the pipeline construction.

Having rejected TGP's argument that Rose's claims are barred by La. R.S. § 9:5624, the Court now turns its attention to TGP's alternative argument that summary judgment is appropriate because

---

[6] The first canal was dredged in 1958. By 1964 when the expropriation trial was held as to the second pipeline, the first canal was already "considerably wider at certain points." Tennessee Gas, 200 So. 2d at 436.

11

Plaintiff has failed to establish that her damages were caused by any fault on the part of TGP. TGP contends that the deposition testimonies of Rose and the land manager Mr. Rodriguez establish that Plaintiff has no evidence of any activities undertaken by TGP since the pipeline's construction that have damaged the property.

Rose's claims are not based on affirmative tortious actions by TGP but rather on alleged tortious omissions or inaction in the face of a legal duty. Thus, while TGP's characterization of the deposition testimonies is accurate, that evidence is not probative of the causation issue with respect to the claims asserted in this case. As the Court appreciates this case, it was always envisioned that expert testimony would be crucial to the causation issue.[7] Naturally, Rose argues in opposition that TGP's motion is premature because she has not had the opportunity to procure expert reports. And she also points out that TGP has failed to demonstrate that the failure to maintain the canals did not cause the erosion to her property.

Contrary to Rose's contention, TGP is not required to disprove Rose's allegations of fault in order to avoid liability.

---

[7] Expert testimony will be crucial in this case because the 1967 appellate opinion recognizes that natural forces have been adversely affecting the property for years. See discussion infra at 13 regarding hurricanes and high tides. Thus, even if Rose proves fault and causation vis à vis TGP, it is highly likely that some portion of the fault will be attributable to natural forces as was the case in St. Martin v. Mobil Explor. & Prod. U.S. Inc., 224 F.3d 402 (5th Cir. 2000).

Rose claims that TGP damaged her property through its own fault so Rose has the burden of proof with respect to causation in this case. If she cannot establish that her damages were caused by TGP's fault then her claims have no merit. This Court is persuaded that Rose cannot meet her burden of proof in this case without expert testimony. The appellate opinion from 1967 suggests that significant natural erosion due to hurricanes and high tides was a problem even back then for her property. So even if some part of Rose's damage today is attributable to fault on the part of TGP, it is highly probable that a significant part of the damage was caused by inevitable natural forces. TGP is only liable for any damage attributable to its own fault, and again, it is Rose's burden to prove how much of her damage was caused by that fault, if any.

That said, expert reports were first due in this case on July 31, 2008. (Rec. Doc. 50). The Court notes that Rose has sought to extend that deadline three times with the last request being filed on November 20, 2009, when her reports were last due. (Rec. Docs. 63, 87, & 114). This latest motion does not suggest when Rose intends to produce her reports. Meanwhile, this case is scheduled to be tried on March 8, 2010, which is fast approaching.

The Court will grant one <u>final</u> extension of the expert report deadline as follows: Plaintiff's expert reports are to be produced to Defendant immediately but in no event later than

13

December 31, 2009. <u>Plaintiff is warned that no further extensions will be granted</u>. Defendant's expert reports shall be produced within **30 days** following timely receipt of Plaintiff's reports. In the interim, the Court will deny TGP's motion for summary judgment as to fault but it does so without prejudice. If Plaintiff fails to come forward with her expert evidence probative of fault by the foregoing deadline, then the Court will have no choice but to grant summary judgment in favor of TGP and to dismiss Rose's claims with prejudice. TGP shall file its motion for summary judgment so that it is heard no later than **January 20, 2010**.[8]

*2) TGP's Motion for Partial Summary Judgment on Damages*

TGP contends that under Louisiana law Plaintiff is not entitled to restoration damages, and if the Court ultimately awards damages, any such award must be "limited" to the difference between the market value of the property before and after the alleged harm was sustained.

When a person sustains property damage due to the fault of another, he is entitled to recover damages including the cost of restoration that has been or may be reasonably incurred, or at his

---

[8] If TGP later moves to re-urge its motion for summary judgment on fault, it shall refile a new motion. The Court will not grant a request to "reinstate" or "reconsider" the instant motion.

election, the difference between the value of the property before and after the harm. <u>Roman Cath. Church v. La. Gas Serv. Co.</u>, 618 So. 2d 874, 879 (La. 1993). In <u>Roman Catholic Church</u>, the Louisiana Supreme Court held that when the cost of restoring the property is disproportionate to the value of the property or economically wasteful, damages are measured only by the difference between the value of the property before and after the harm, *unless there is a reason personal to the owner for restoring the original condition or there is a reason to believe that the plaintiff will in fact make the repairs*. 618 So. 2d at 879. In <u>Roman Catholic</u>, the plaintiff was entitled to full restoration costs because the value of the property far exceeded the restoration costs. <u>Id.</u> The evidence also established a reason personal to the Archdiocese for making the repairs and the repairs had in fact already been made. <u>Id.</u>

In <u>Hornsby v. Bayou Jack Logging</u>, the defendant had damaged the plaintiffs' land by inadvertently removing trees without consent. 902 So. 2d 361 (La. 2005). The evidence presented at trial established that the value of the plaintiffs' property was disproportionate to the damage award but the district court was convinced that the plaintiffs had shown "personal reasons" which justified an award exceeding the value of the property. <u>Id.</u> at 366-68. The plaintiffs had testified regarding plans to place a home site and camp on the land sometime in the future and to

15

eventually transmit the land to their descendants in pristine condition.  Id. at 367.  One plaintiff intended to allow his daughter to build a home on the land and to use another portion of the land to live during his future retirement.  Id. at 368.  The district court concluded that the plaintiffs had shown "emotional ties" to the land that justified an award greater than the value of the property.  Id. at 367.

The Supreme Court rejected the district court's conclusion and held that the district court erred in awarding the plaintiffs restoration damages under Roman Catholic Church.  Hornsby, 902 So. 2d at 368-69.  The court explained that the plaintiffs' "self-serving testimony of their inchoate intent to develop the land at some undetermined future point" was insufficient to support an award of restoration costs in excess of the actual market value of the land and the trees cut.  Id.

In contrast, the Fifth Circuit held in St. Martin v. Mobil Exploration that the plaintiffs had demonstrated a sufficient personal interest in their property so as to recover restoration costs under Roman Catholic Church.  224 F.3d at 411.  The plaintiffs had made a significant personal investment in the land as a wildlife refuge, a conservation cause that plaintiffs strongly supported.  The plaintiffs also lived adjacent to the land in question, and had used the land for fishing and recreation for a considerable period of time.  St. Martin, 224 F.3d at 410.

The plaintiffs had even attempted their own restorative efforts with respect to the land in question. Id. at 411.

Rose, who is now 72 years of age, inherited a 4/9's interest in the property after her father and uncles passed away and the Violet Trapping Company was dissolved. She has never visited the property at any time in her life. (Pla. depo at 30). She does not know if she has photos of the property. (Id. at 31). Rose has no firsthand knowledge about the alleged erosion and she learned about it only when her son visited the property. (Id. at 40). Rose does not know how the property has been used since 1990. (Id. at 32). She has received no income from the property. (Id. at 32). Rose testified that she has given no thought as to what she would do with a damage award except that she has two sons and grandchildren. (Id. at 35). Rose had no personal plans for the property prior to filing this lawsuit. (Id. at 41). Rose has never invested any money in the property. (Id. at 61).

Based on the foregoing testimony it is clear that Rose cannot meet the "personal reasons" requirement of Roman Catholic Church. The fact that she inherited a 4/9's interest in land that her family owned for years does not even rise to the level of the evidence in Hornsby that the Louisiana Supreme Court found insufficient to support a damage award for restoration costs.

However, as Rose points out in opposition to TGP's motion, the record contains no evidence whatsoever regarding the value of

Rose's property. The principles of <u>Roman Catholic Church</u> only apply if the evidence shows that the cost of restoring the property would be disproportionate to its value or economically wasteful. Having presented no evidence on either front, TGP's motion is DENIED.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 99)** filed by defendant Tennessee Gas Pipeline Co. is **DENIED**;

**IT IS FURTHER ORDERED** that the **Motion for Partial Summary Judgment on Damages (Rec. Doc. 98)** filed by defendant Tennessee Gas Pipeline Co. is **DENIED**;

**IT IS FURTHER ORDERED** that the **Motion for Extension of Deadlines (Rec. Doc. 114)** filed by plaintiff Ann Lynne Mirandona Rose is **GRANTED**.

December 7, 2009

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE